# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |
|---|
| **In re** |
| **NATALY MINKINA,** |
| **Debtor** |

**Chapter 13**
**Case No. 18-13325-FJB**

**MEMORANDUM OF DECISION ON**
**DEBTOR'S MOTION TO AVOID JUDICIAL LIEN OF RP&S**

By the motion before the Court, chapter 13 debtor Nataly Minkina ("the Debtor") moves under 11 U.S.C. § 522(f)(1)(A) for an order avoiding the judicial lien held by the law firm of Rodgers, Powers & Schwartz, LLP ("RP&S") against the real property constituting her residence on the basis that the lien impairs the homestead exemption to which she is entitled. RP&S opposes the motion, disputing that its lien in fact impairs the exemption ("the Motion"). For the reasons set forth below, the Court will grant the Motion and avoid the lien.

**FACTS AND PROCEDURAL HISTORY**

On August 29, 2018, the Debtor commenced this bankruptcy case by filing a petition for relief under chapter 13 of the Bankruptcy Code. At the time, she and her husband owned, in a tenancy by the entirety, the real property that constitutes their home in Brookline, Massachusetts ("the Property"). The Debtor alleges, and RP&S does not dispute, that at the time, the Property was subject to three encumbrances: in order of priority, a first-position mortgage in favor of TIAA FSB in the amount of $38,981.41, a second-position mortgage in favor of Century Bank & Trust Company in the amount of $138,759.17, and a judicial lien, specifically a writ of execution, on the Debtor's interest in the Property in favor of RP&S in the amount of $250,094.44. The Debtor further alleges, and RP&S does not dispute,

that on December 29, 2010, the Debtor's husband caused a declaration of homestead under then MASS.

GEN. LAWS ch. 188, § 1[1] to be recorded as to the Property at the appropriate registry of deeds.

On March 27, 2019, the Debtor filed the Motion. By it, she seeks an order under 11 U.S.C. §

522(f)(1)(A) avoiding RP&S's judicial lien on the basis that the lien impairs the $500,000 homestead

exemption that she is entitled to claim as to the Property. Her argument as to the extent of impairment

turns on the manner in which, for purposes of a lien-avoidance motion under § 522(f)(1)(A), the interest

of a debtor in property that she and her spouse own in a Massachusetts tenancy by the entirety is

valued.  The Debtor argued that the view espoused by the Bankruptcy Appellate Panel in *In re Snyder*,

249 B.R. 40 (1st Cir. BAP 2000), that the value of the debtor's interest is as a matter of law equal to the

full value of the property, is flawed and that the Court should instead either (i) apply an actuarial

approach to determine the fair market value of the Debtor's interest or (ii) find that the Debtor and her

husband each hold a fifty percent interest in the Property's fair market value. RP&S filed an opposition

to the Motion in which it took no issue with the facts alleged and based its opposition entirely on

defending the holding in *Snyder*.

In the Motion, the Debtor had requested, in the interest of judicial economy, that the Court first

determine as a matter of law whether it would follow *Snyder*, and then, if the Court would reject *Snyder*,

schedule a further proceeding to determine the value of the Debtor's interest in the Property. In its

opposition, RP&S joined in this request. Accordingly, after a preliminary hearing on the Motion, the

Court issued an interim order in which it indicated that it was not inclined to follow *Snyder* and that it

would schedule an evidentiary hearing to value the Debtor's interest. RP&S then filed a notice of appeal

from this order, which appeal was eventually dismissed as premature.

---

[1] When this declaration was filed, the filing of a declaration to establish an estate of homestead was governed by §
1 of the Massachusetts homestead statute, then (as now) codified at MASS. GEN. LAWS ch. 188. In the intervening
decade, the Massachusetts homestead statute has been substantially amended, such that (among other things)
the filing of a declaration to establish an estate of homestead now is governed by § 3 of ch. 188.

Upon remand of the matter to the Bankruptcy Court, the parties filed a stipulation as to facts needed to adjudicate the Motion. Specifically, they agreed that the value of the Property is $1,050,000 and that the market value of the Debtor's interest in the Property subject to her non-debtor spouse's right of survivorship does not exceed $525,000. At a status conference, the Court then ascertained that the parties intended that the Court take the Motion under advisement on the record thus established, without need of an evidentiary hearing. With leave of court, RP&S filed a further brief in which it supplemented its opposition to the Motion, and the Debtor filed a reply. In its supplemental opposition, RP&S for the first time raised a new ground of opposition: that if the value of the Property is to be allocated as in a tenancy in common, then the homestead exemption and the other liens on the property must also be allocated. Upon receipt of these supplemental briefs, the Court took the matter under advisement.

**JURISDICTION AND AUTHORITY**

The Motion is a proceeding to avoid a judicial lien under 11 U.S.C. § 522(f). It arises under the Bankruptcy Code and in a bankruptcy case and therefore falls within the jurisdiction given the district court in 28 U.S.C. § 1334(b). By standing order of reference, the District Court has referred the matter to the bankruptcy court pursuant to 28 U.S.C. § 157(a). It is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1) and (b)(2)(O) (core proceedings include other proceedings affecting the adjustment of the debtor-creditor relationship). The bankruptcy court accordingly has authority under § 157(b)(1) to enter a final order on the Motion.

**DISCUSSION**

a. **Statute and Positions**

The Debtor seeks to avoid RP&S's judicial lien under 11 U.S.C. § 522(f)(1)(A). In relevant part, § 522(f) states:

> (1) . . . [T]he debtor may avoid the fixing of a lien on an interest of the
> debtor in property to the extent that such lien impairs an exemption to

3

which the debtor would have been entitled under subsection (b) of this
section, if such lien is—

> (A) a judicial lien, other than a judicial lien that secures a debt of a
> kind that is specified in section 523(a)(5)[.]

(2)(A) For the purposes of this subsection, a lien shall be considered to
impair an exemption to the extent that the sum of—

> (i) the lien;

> (ii) all other liens on the property; and

> (iii) the amount of the exemption that the debtor could claim if
> there were no liens on the property;

exceeds the value that the debtor's interest in the property would have
in the absence of any liens.

11 U.S.C. § 522(f). "Value" as used in § 522 is a defined term meaning "fair market value as of the date

of the filing of the petition or, with respect to property that becomes property of the estate after such

date, as of the date such property becomes property of the estate." 11 U.S.C. § 522(a)(2). As used in the

Bankruptcy Code, "lien" means, in relevant part, "charge against or interest in property to secure

payment of a debt," and "judicial lien" means "lien obtained by judgment, levy, sequestration, or other

legal or equitable process or proceeding." 11 U.S.C. § 101(37) (defining lien) and (36) (defining judicial

lien).

Most aspects of the application of § 522(f)(1)(A) to RP&S's lien are not in dispute. The parties

agree, and the Court holds, that RP&S's execution constitutes a lien and, in particular, a judicial lien

within the meaning of § 522(f).[2] They further agree, and the Court holds, that, by virtue of her

ownership of the Property with her husband through a tenancy by the entirety, the Debtor has an

interest in the Property, and that RP&S's lien is fixed on that interest. Consistent with the definition of

value in § 522(a)(2), the parties agree, and the Court holds, that the relevant date for determination of

---

[2] Neither party contends that RP&S's judicial lien falls into the exception in § 522(f)(1)(A) for "a judicial lien that
secures a debt of a kind that is specified in section 523(a)(5)."

the value that the Debtor's interest in the property is the petition date. The Debtor alleges and RP&S

does not dispute, and accordingly the Court finds, that as of the petition date, the amount of RP&S's lien

was $250,094.44 and that there were two other liens on the property whose amounts were $38,981.41

and $138,759.17, a total of $177,740.58. They further agree, and the Court holds, that by virtue of her

husband's declaration of homestead, the Debtor is entitled under § 522(b) to claim a homestead

exemption in the property under Mass. Gen. Laws ch. 188. They further agree, and accordingly the Court

finds, that the value of the Property is $1,050,000 and that the market value of the Debtor's interest in

the Property subject to her non-debtor spouse's right of survivorship does not exceed $525,000.

The parties disagree on three issues.  The first concerns the manner for determining the value

that the debtor's interest in the property would have in the absence of any liens. RP&S argues that,

where the property is held by the Debtor through a Massachusetts tenancy by the entirety, the Court

must follow *Snyder*'s rule that the interest of one spouse in property held in a tenancy by the entirety is

*per se* the full fair market value of the property.  The Debtor counters that *Snyder* is wrongly decided

and that the Court should instead use the market value of the Debtor's interest, subject as it is to

limitations in the nature of her husband's continuing rights in the Property. The second issue on which

the parties disagree is the amount of the exemption that the Debtor could claim if there were no liens

on the property. The Debtor argues that she could claim the full $500,000 exemption available under

Mass. Gen. Laws ch. 188, §§ 1 (in relevant part, defining "declared homestead exemption" as "an

exemption in the amount of $500,000") and 3 (declared homestead exemption acquired by a written

declaration executed and recorded in accordance with section 5). RP&S does not dispute that $500,000

is the appropriate extent of exemption if the Debtor's interest is valued per *Snyder*, but RP&S argues

that if the valuation is instead done by allocation (that is, if less than the full value of the property is

attributed to the Debtor), then the exemption too should be apportioned as prescribed for tenants in

common in ch. 188, § 1, meaning in proportion to her percentage ownership.  The third issue is whether,

as RP&S argues, if the Court does not follow *Snyder*, the Court should apportion the "other liens" on the

property for application of part (ii) of the impairment formula in § 522(f)(2)(A).

    **b.   How to Value the Debtor's Interest**

       **i.   *Snyder* and the State of the Question**

    *Snyder* began in the Bankruptcy Court with a debtor's motion to avoid a judicial lien on property

that he and his spouse owned in a Massachusetts tenancy by the entirety.  For purposes of application

of the statutory formula for determining the extent that the creditor's lien impaired the debtor's

exemption, the lien holder argued that, because each spouse in a tenancy by the entirety has title to the

whole of the property, the debtor's interest in the property should be valued at one-hundred percent of

the property's fair market value. The debtor, on the other hand, argued that because he shared title to

the property with his wife and was likely to predecease her—which, by virtue of her right of

survivorship, would result in her accession to his interest free and clear of liens thereon—his interest in

the property was no more than fifty percent of its value and probably less. After surveying the law of

tenancy by the entirety in Massachusetts, Bankruptcy Judge Carol Kenner began by rejecting the lien

holder's contention that, because a tenancy by the entirety is a "unitary title," giving both spouse's title

to the entirety, the debtor's interest should be deemed equal to the full value of the property.  *In re*

*Snyder*, 231 B.R. 437, 443 (Bankr. D. Mass. 1999).  The court explained:

> The above review of Massachusetts law makes clear that the unitary title
> does not give each spouse the same rights in the property as he or she
> would have as sole owner. Each spouse's rights in the property are
> drastically circumscribed by those of the other. The Debtor's rights are
> limited by, among other things, his wife's right to occupy the premises for
> as long as she lives and by her right of survivorship.

*In re Snyder*, 231 B.R. 437, 443 (Bankr. D. Mass. 1999). The court went on to observe that, in view of the

features of a tenancy by the entirety, the extent of the debtor's interest in the property was essentially

indeterminate and could not be known until the tenancy was eventually terminated. In view of that

indeterminacy, the court entered a provisional disposition of the motion: it avoided the lien only in part,

based on the express assumption that, upon termination of the tenancy by the entirety, the debtor's
interest will extend to the whole of the property; but the court also ordered that that, if, when the
tenancy is terminated or when the nondebtor spouse ceases to occupy the property as her primary
residence, such that the lienholder becomes free to enforce its lien, the assumption proves to be wrong,
the order shall be subject to reconsideration for changed circumstances, specifically that the debtor's
interest does not at that time extend to the whole of the property, warranting avoidance of the lien to a
greater extent.

The debtor appealed to the Bankruptcy Appellate Panel for the First Circuit (BAP), arguing that
the bankruptcy judge should have valued his interest using an actuarial method. The BAP rejected this
argument for two reasons. First, on the basis of the legislative history of § 522(f) and the bankruptcy
rules governing lien avoidance motions thereunder, the BAP held that a proceeding to avoid a lien under
§ 522(f) should be "a summary proceeding susceptible to a quick and binding resolution," and the
actuarial determination of a debtor's interest—which "would require in each instance a determination
of the Debtor's interest based on age, sex, health and all other factors that go into making that type of
actuarial determination of value"—would not fit that mold. *In re Snyder*, 249 B.R. 40, 46 (B.A.P. 1st Cir.
2000).  Second, the BAP rejected the possibility of treating the tenancy by the entirety as if it were a
tenancy in common and assuming that the debtor had a fifty percent interest in the property. The BAP
stated: "this seems to fly in the face of the leading Massachusetts case, *Coraccio v. Lowell Five Cents Sav.
Bank*, 415 Mass. 145, 612 N.E.2d 650 (1993) in which the Massachusetts Supreme Judicial Court stated
'it does not follow that each has an equal one-half interest in the property. On the contrary, a tenancy
by the entirety remains a unitary title, and the statute simply guarantees each spouse an equal right to
the whole.' *Id*. at 151, 612 N.E.2d 650." *In re Snyder*, 249 B.R. at 46. Accordingly, on the basis of
*Coraccio*'s declaration that each spouse has a right to the whole, the BAP held that "the Debtor's
interest in the tenancy by the entirety property for purposes of the section 522(f) formula should be

7

valued at 100 percent." *Id*.  Citing the need for finality in bankruptcy, to ensure the debtor a fresh start,

the BAP went on to declare that this valuation would be final, not subject to reconsideration upon the

occurrence of an event that terminates the tenancy by the entirety.  *Id*.

The debtor took a further appeal to the Court of Appeals, which left the BAP's disposition

undisturbed. The Court of Appeals did not address the valuation issue, stating that the debtor had

waived the issue in the bankruptcy court by declining an opportunity to present actuarial evidence.  *In re*

*Snyder*, 2 F.App'x 46, 49 (1st Cir. 2001).  The Court of Appeals has never addressed the manner of

valuation for purposes of 11 U.S.C. § 5222(f)(1)(A) of a debtor's interest in property held in a tenancy by

the entirety.[3]

The BAP had occasion to address that issue again in 2002. See *In re Maloni*, 282 B.R. 727, 732

(1st Cir. BAP 2002).  Affirming a bankruptcy judge's vacatur of an order avoiding a judicial lien, the BAP

held that in a Massachusetts tenancy by the entirety, each spouse has "an equal right to the whole":

that is, "each spouse continues to have equal title of the property and equal interest (100 percent) in

the property." *Id*.

Since its issuance, the BAP's *Snyder* decision has been followed in the Bankruptcy Courts in this

district and elsewhere on the manner of valuation of a debtor's interest in a tenancy by the entirety.

See *In re Donald F. Drew*, 2011 WL 4915006 (Bankr. D. Mass. 2011) (a Massachusetts tenancy by the

entirety); *In re Strandberg*, 253 B.R. 584, 589 (Bankr. D. R.I. 2000) (applying *Snyder*'s reasoning to a

Rhode Island tenancy by the entirety); and *In re Levinson*, 2007 WL 2122037, at *7 (Bankr. E.D.N.Y. 2007)

(applying *Snyder*'s reasoning to a New York tenancy by the entirety). I myself have followed *Snyder*,

---

[3] In *Garran v. SMS Financial V, LLC (In re Garran)*, 338 F.3d 1 (1st Cir. 2003), the Court of Appeals cited *Snyder* only
for its replication of the statutory formula for impairment. It neither endorsed nor discussed the portion of *Snyder*
that deals with the manner of valuation of the debtor's interest in the property.  Valuation of the debtor's interest
was not an issue in *Garran*.

albeit in an unpublished decision, and without facing the arguments against it that have been presented

here. See *In re Bateman*, 17-11217-FJB, Order of August 18, 2017.

Still, in *dicta*, one court expressed reservations about *Snyder*'s reasoning:

> [*Snyder*] employs a bright line that is easy to follow and apply. However,
> because it values one spouse's interest in a tenancy by the entirety
> without regard for how the tenancy is terminated—something that is
> simply impossible under Massachusetts law—it seems not entirely
> faithful to Massachusetts law. In effect, this uses against the debtor the
> legal fiction that two spouses can each have a one-hundred percent
> interest in the same asset. This fiction serves a salutary purpose in state
> property law when viewed within the web of rights and relations—
> including those wherein the method of termination finally determines the
> extent of a spouses interest—that constitute the form of ownership
> known as tenancy by the entirety. Removed from that context, as it is in
> *Snyder*, the fiction may not be a fair representation of the real extent of
> one spouse's interest vis-à-vis the other in the real property.

*In re O'Connell*, 334 B.R. 312, 315 fn.6 (Bankr. D. Mass. 2005). Also, in at least two bankruptcy cases that

predated *Snyder*, bankruptcy judges in this district ruled that the value of a debtor's interest in property

held with his or her spouse in a Massachusetts tenancy by the entirety was something less than the full

value of the property.  See *In re Coombs*, 86 B.R. 314, 315-16 (Bankr. D. Mass. 1988) (Queenan, J.) (for

purposes of complaint by trustee under 11 U.S.C. § 363(h) for authority to sell with debtor's interest the

interest of his non-debtor wife in $75,000 property that they held in a pre-1980 Massachusetts tenancy

by the entirety, finding, on the basis of actuarially-informed appraisal, that value of debtor's interest

was $65,000; and further holding that indefeasibility of wife's survivorship rights greatly diminishes

value of sale to the estate); and *In re Conroy*, 224 B.R. 282, 285 (Bankr. D. Mass. 1998) (Hillman, J.) (for

purposes of valuation of exemption claimed by debtor in real property he held with his wife in a pre-

1980 Massachusetts tenancy by the entirety, rejecting argument that value of debtor's interest is the

full value of the property, and, on basis of the debtor husband's superior rights, finding that the value of

debtor's interest is more than 50 percent of the full value of the property).

There is no circuit level authority on the question presented. And, as RP&S concedes, the

opinions of the Bankruptcy Appellate Panel for this circuit are not binding on bankruptcy courts within

the circuit. *In re Virden*, 279 B.R. 401, 409 n. 12 (Bankr. D. Mass. 2002) ("[A]lthough the BAP decision

may be persuasive authority, it is not binding precedent on this Court.); *LBM Fin. LLC v. Shamus*

*Holdings, Inc.*, 210 WL 4181137 at 2, n. 2 (D. Mass. Sep. 28, 2010) ("This Court is not bound by the

decisions of a BAP, although such decisions may have persuasive authority.") and cases cited.

Accordingly, I address the valuation issue without binding precedent.

   **ii.**   **A Fresh Look**

Subsection 522(f)(2)(A) requires a determination of "the value that the debtor's interest in the

property would have in the absence of any liens."  11 U.S.C. § 522(f)(2)(A).  And subsection 522(a)(2)

instructs that "value" in this section means "fair market value as of the date of the filing of the petition."

11 U.S.C. §522(a)(2) (defining value for purposes of § 522).  The issue presented requires determination

of the meaning of these words as they appear in the Bankruptcy Code, a federal statute, and therefore

the issue is one of federal law.  To be sure, this federal issue requires an understanding of the Debtor's

interest in and rights with respect to the Property; and these are a function of state law, in this instance

the law of Massachusetts, as the state in which the real property is located.  *Butner v. United States, et*

*al*., 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d. 136 (1979) ("Property interests are created and defined by

state law. Unless some federal interest requires a different result, there is no reason why such interests

should be analyzed differently simply because an interested party is involved in a bankruptcy

proceeding."). But the ultimate issue, how to value the Debtor's interest in the Property, is one of

federal law.

## A.  The Relevant State Law

The Debtor owns the Property with her husband in a tenancy by the entirety, and, as in *Snyder*, one created after February 11, 1980.[4]  Massachusetts law with respect to such tenancies by the entirety was carefully reviewed by Judge Kenner in her *Snyder* decision at 231 B.R. at 441-43. The BAP incorporated that section of Judge Kenner's decision verbatim into its opinion. See *Snyder*, 249 B.R. at 43-45.  It remains an accurate and thorough survey of Massachusetts law on the subject. Accordingly, I incorporate that portion of Judge Kenner's decision here by reference, without need of reiteration, except only to highlight a few features of the law.

First, through a unitary title, each spouse's ownership extends to the whole of the property.  A tenancy by the entirety is a form of concurrent ownership that can exist only between co-owners who are married to each other.  *Coraccio v. Lowell Five Cents Savings Bank*, 415 B.R. 145, 148 (1993). In such a tenancy, the two spouses "are seised of the estate so granted *as one person*, and not as ordinary joint tenants or tenants in common." *Id*. at 148, quoting from *Raptes v. Pappas*, 259 Mass. 37, 38 (1927) (emphasis added). Therefore, the spouses hold the property not as "two tenants by the entirety," but as one person, in one tenancy. As Judge Kenner explained: "The point is more than semantic; it underscores that a tenancy by the entirety is a "unitary title": a title in which the interests of both husband and wife extend to the whole of the property, not merely to some fractional interest that the other does not also hold." *Snyder*, 231 B.R. at 442, citing *Coraccio*, 415 Mass. at 151. By a 1979 amendment to Massachusetts law, applicable to tenancies by the entirety created after February 11, 1980, each spouse is "equally entitled to the rents, products, income or profits and to the control, management and possession of property held by them as tenants by the entirety." MASS. GEN. LAWS ch. 209, § 1.  Still, as the Supreme Judicial Court has stated:

---

[4] The Debtor alleges, and RP&S has not denied, that the Property is held by the Debtor and her husband in a tenancy by the entirety "pursuant to a certain deed dated October 24, 1997," which I understand to be the date of creation of the tenancy by the entirety.

> [I]t does not follow that each has an equal one-half interest in the property. On the contrary, a tenancy by the entirety remains a unitary title, and the statute simply guarantees each spouse an equal right to the whole.

*Coraccio*, 415 Mass. at 151.

Second, a tenancy by the entirety "continues during the existence of the marital relationship and cannot be changed except by death, divorce, a deed of both parties or a deed of one spouse to the other." *Campagna v. Campagna*, 337 Mass. 599, 605 (1958); *In re Conroy*, 224 B.R. 282, 285 (Bankr.D.Mass.1998) (Hillman, J.).

Third, neither spouse may compromise or alter the tenancy unilaterally. For as long as the marriage continues, the estate cannot be severed, terminated, or partitioned by either spouse without the assent of the other. *Id*. at 149. Either spouse may convey or encumber his or her own interest, *id*. at 152, but the interest so conveyed would be subject to the continuing rights of the other in the property, such that the interest conveyed would, among other things, be wholly defeasible upon the death of the conveying spouse and survival of the other. *Id*.

And fourth, each spouse has a right of survivorship.  If the tenancy is ended by the death of one spouse, that spouse's interest is wholly terminated and does not become part of his or her estate. *Petition of Smith*, 361 Mass. 733, 737 (1972) (property held by tenancy by the entirety passes to the survivor by operation of law and does not constitute a part of the decedent's estate). By right of survivorship, the survivor of the marriage "becomes seised as sole owner of the whole estate, regardless of anything the other may have done." *Coraccio*, 415 Mass. at 149, quoting from *Licker v. Gluskin*, 265 Mass. 403, 404 (1929). No conveyance by either spouse alone can defeat the other's right of survivorship. *Coraccio*, 415 Mass. at 151.

On the basis of this survey, two things are abundantly clear: first, that title being unitary and undivided, each spouse's interest extends to the whole of the property; and second, that this does not mean that each spouse owns *all* the rights to the property. Rather, each spouse's rights are limited by

the co-extensive rights of the other. For example, in the present case, the Debtor's interest extends to

the whole, but so does her husband's. The Debtor's interest includes an indefeasible right of

survivorship, but so does her husband's. The Debtor's interest is protected by her husband's inability to

transfer the property (as opposed to his interest in it) unilaterally, but so is she unable to transfer the

property unilaterally. As Judge Kenner concluded:

> The above review of Massachusetts law makes clear that the unitary title
> does not give each spouse the same rights in the property as he or she
> would have as sole owner. Each spouse's rights in the property are
> drastically circumscribed by those of the other. The Debtor's rights are
> limited by, among other things, his wife's right to occupy the premises for
> as long as she lives and by her right of survivorship.

*In re Snyder*, 231 B.R. at 443. In short, there is no plausible construction of Massachusetts law

concerning tenancies by the entirety under which one spouse's interest can be said to include,

exclusively, all rights in the property.

RP&S argues that, by certain language in *Coraccio*— that "a tenancy by the entirety remains a

unitary title, and the statute [ch. 209, § 1] simply guarantees each spouse an equal right to the whole"—

the Supreme Judicial Court has ruled that the value of one spouse's interest in property held in a

tenancy by the entirety is equal to the full value of the property itself. This same reasoning appears to

be at the heart of the BAP's *Snyder* decision, where the BAP moved without explanation from this

language in *Coraccio* to the conclusion that the debtor's interest should be valued at the property's full

value:

> The second possibility is to treat the tenancy by the entirety as if it were a
> tenancy in common and assume that the Debtor has a fifty percent
> interest in the property. However, this seems to fly in the face of the
> leading Massachusetts case, *Coraccio v. Lowell Five Cents Sav. Bank*, 415
> Mass. 145, 612 N.E.2d 650 (1993) in which the Massachusetts Supreme
> Judicial Court stated "it does not follow that each has an equal one-half
> interest in the property. On the contrary, a tenancy by the entirety
> remains a unitary title, and the statute simply guarantees each spouse an
> equal right to the whole." Id. at 151, 612 N.E.2d 650. Thus, the Panel
> agrees with the bankruptcy court that the Debtor's interest in the tenancy

13

> by the entirety property for purposes of the section 522(f) formula should
> be valued at 100 percent.

*In re Snyder*, 249 B.R. at 46.  For several reasons, I find that the language in *Coraccio* does not mean

what the BAP construed it to mean, and what RP&S now argues that it means.

First, the *Coraccio* decision was not about valuation. In *Coraccio*, the plaintiff wife and her

husband held real property in a post-1980 tenancy by the entirety, and the husband, acting without the

wife's knowledge or consent, had given the defendant bank a mortgage on his interest in the property.

When the bank later attempted to foreclose its mortgage on the husband's interest, the wife sued the

bank for three things:  a declaration as to whether, under G.L. 209, § 1, a mortgage of property held by

the entirety, granted by one spouse without the other's knowledge, can be a valid encumbrance;

damages under MASS. GEN. LAWS ch. 93A, § 9 for the bank's acceptance of the husband's mortgage; and

breach of the implied covenant of good faith and fair dealing that arose from an earlier mortgage that

both spouses had joined in giving the bank. Regarding the count for declaratory relief, the SJC ordered

"that the judgment dismissing [the wife's] complaint be modified to declare that MASS. GEN. LAWS ch.

209, § 1, does not prohibit a spouse from encumbering his or her interest in property held by the

entirety, without the other spouse's consent, but that the bank, in the alleged foreclosure proceeding

pending in the Land Court (if it be still pending) cannot acquire possession or title over the property if

the facts alleged are established." *Coraccio*, 415 Mass at 154. Regarding the count under ch. 93A, the

court ruled that it had not been improper for the bank to take the mortgage from the husband, and

therefore this count had been properly dismissed for failed to state a claim on which relief could be

granted. And regarding the count for breach of the implied covenant of good faith and fair dealing, the

court ruled that it was without merit and had been appropriately dismissed. Nowhere in the SJC's

opinion did the court address an issue of valuation of any kind.

In the language at issue, which occurs in the portion of the opinion that addresses the count for

declaratory relief, the Court was not addressing valuation. Rather, it was considering whether the

enactment of MASS. GEN. LAWS ch. 209, § 1—which equalized the rights of husband and wife as to
property held by them as tenants by the entirety—had altered "the estate itself," meaning the common
law tenancy by the entirety as it existed in Massachusetts prior to this enactment. The SJC held that "a
tenancy by the entirety remains a unitary title," such that each spouse has not "an equal one-half
interest in the property" but "an equal right to the whole." *Coraccio*, 415 Mass at 154. This was a
pronouncement about the extent of an interest, not about how to value that interest.  It is one thing to
say that an interest has a given extent and quite another to say how an interest of that extent should be
valued.

In addition, had the SJC understood itself to be pronouncing on an issue of valuation, and to be
declaring that the value of each spouse's interest is equal to the value of the property as a whole, it
would likely have included in its opinion two things that are not there. First, it would have indicated the
purpose of the valuation standard, but no purpose of valuation or statute or law requiring valuation is
mentioned.  Second, had this been a pronouncement about valuation, it would have been a startlingly
perplexing one: that the values of the interests of the two owners of property can and do total twice the
value of the property. That the SJC did not see fit to comment on, let alone explain, this peculiar
pronouncement is further cause to conclude that it did not understand itself to be addressing valuation.
For all these reasons, I conclude that, in the language in question, the SJC did not understand itself to be
pronouncing on the valuation of each spouse's interest in property held in a tenancy by the entirety.[5]

RP&S may respond that, even if the SJC was not pronouncing on valuation per se, it clearly was
pronouncing on the extent of each spouse's interest, and valuation corresponds directly to extent of
interest.  Perhaps this is the reasoning that informed the BAP's *Snyder* decision.  The reasoning is faulty

---

[5] In any event, the SJC did not purport to be ruling on the meaning of "the value that the debtor's interest in the
property would have" as those words appear in 11 U.S.C. § 522(f)(2)(A), the issue now under consideration. And if
the SJC had been pronouncing on that issue, it would have been expressing an opinion on federal law, not
Massachusetts property law, and for that reason, contrary to what RP&S argues, its ruling would not be binding
here under *Butner*, *supra*.

because it assumes that the small passage in question—the pronouncement that each spouse had a

right to the whole—was the full sum and substance of the SJC's delimitation of the extent of each

spouse's interest. In fact, the SJC said other things that further delimited the extent of each spouse's

interest:  among them, that each enjoys an indefeasible right of survivorship, that each enjoys a right to

possess the property for as long as the tenancy by the entirety continues, and that neither may transfer

the property unilaterally.  In short, it is a mischaracterization of *Coraccio* to say that it held that each

spouse had one hundred percent of the ownership rights.

### B.  Section 522(f)

I turn back to § 522(f)(2)(A). It requires a determination of "the value that the debtor's interest

in the property would have in the absence of any liens." 11 U.S.C. § 522(f)(2)(A). "Value" in this section

means "fair market value as of the date of the filing of the petition."[6] 11 U.S.C. § 522(a)(2) (defining

value for purposes of § 522).  This definition requires that the debtor's interest be valued at fair market

value, a term not defined in the Bankruptcy Code but widely held to mean "the price at which the

property would change hands between a willing buyer and a willing seller, neither being under any

compulsion to buy or to sell and both having reasonable knowledge of relevant facts." *United States v.*

*Cartwright*, 411 U.S. 546, 93 S.Ct. 1713, 1716-17, 36 L.Ed.2d 528 (1973) (citing definition in a treasury

regulation).

Would a prospective purchaser, reasonably informed about the package of rights that

constitutes one spouse's interest in property held in a post-1980 Massachusetts tenancy by the entirety,

be willing to pay the full value of the property for just one spouse's interest? This is a question of fact, to

be answered on a case-by-case basis.

By its stipulation that the value of the Debtor's interest is not more than $525,000, and

therefore no more than half the value of the Property as a whole, RP&S concedes that, in this instance

---

[6] Notably, there is no mention of this definition in the *Snyder* decisions at any level.

at least, the fair market value of the Debtor's interest is not equal to the value of the Property as a whole. It is clear enough that this will usually, if not always, be the case.  A reasonably informed buyer, familiar with the limitations inherent in the interest of one spouse in a tenancy by the entirety, would know: (i) that it would be acquiring the property subject to the right of the other spouse to possess the property until the tenancy by the entirety was terminated; (ii) that the interest being transferred would be subject to the other spouse's right of survivorship, such that if the selling spouse were to predecease the other, the sold interest would then simply pass by operation of law to the surviving spouse; and (iii) that the interest being purchased would not permit the purchaser to sell the property unilaterally, without the joinder of the other spouse in the sale, during the remainder of the tenancy by the entirety. Most buyers would insist on a discount from the full value of the property. These considerations are not irrelevant to the valuation of one spouse's interest.

RP&S contends that when the interest being valued is a debtor's interest in a Massachusetts tenancy by the entirety, the valuation method prescribed in § 522(f)(2)(A) and § 522(a)(2) must be refocused from the fair market value not of the debtor's interest to that of the property as a whole, because, RP&S contends, as a matter of Massachusetts law, the debtor's interest extends to the property as a whole. I reject this urging to tamper with the statutory test for two reasons. First, I am not free to disregard the statutory standard. It requires that the Court use the fair market value of the debtor's interest and admits of no variance for how state law may define that interest.  Second, as the Court has above explained at length, it is a mistake, a misreading of Massachusetts law, to construe it as equating the interest of one spouse in a tenancy by the entirety with all the rights in the property. Massachusetts law is clear that the interest of each spouse, though it extends to the whole, must co-exist with equally extensive rights in the other spouse, many of which would understandably make a purchaser of the interest of one spouse alone unwilling to pay the full value of the property for that interest.  The alteration here being urged would in fact be inconsistent not only with the statutory

standard in § 522(f)(2)(A) but with Massachusetts law and (at least in most instances) with a fair market valuation of the debtor's interest.

There is a further reason in the Bankruptcy Code to resist the conclusion that the debtor's interest should extend for bankruptcy purposes to the whole value of the property.  Section 363(h) of the Bankruptcy Code authorizes a trustee in bankruptcy to sell, in certain circumstances, with the interest of the debtor (which via 11 U.S.C. § 541(a)(1) became property of the estate upon the debtor's bankruptcy filing) the interest of his or her spouse in property they hold in a tenancy by the entirety. 11 U.S.C. § 363(h). And § 363(j) requires that after such a sale, the proceeds of the sale shall be distributed to the spouse and the estate "according to the interests of such spouse . . . and of the estate." According to the rule that RP&S now urges on the Court—to value the interest of each spouse at the full value of the property—the trustee, upon sale of the property, would be obligated by § 363(j) to pay the full sale proceeds both to the non-debtor spouse and to the estate. From the x dollars received from the sale, the trustee would be obligated to distribute x dollars twice. The scenario points out the fundamental difficulty in the construction of state law that RP&S is urging on the Court. The value of the interests of two spouses in property that they hold in a Massachusetts tenancy by the entirety cannot total more than one hundred percent of the value of the property.

### C.  Valuation Process

The fair market value of a debtor's interest in property for purposes of § 522(f)(1)(A) is an issue of fact, to be determined on a case by case basis. I need not make that factual determination in this instance because the parties have stipulated to the value of the Debtor's interest, but it remains necessary to address certain of the BAP's reasoning in *Snyder*.  Specifically, the BAP based its conclusion about the meaning of value in § 522(f)(2)(A) in part on the bankruptcy rules governing lien avoidance motions, that they permit lien avoidance under § 522(f) to be sought by motion instead of through a full-blown adversary proceeding.  See Fed. R. Bankr. P. 4003(d) ("A proceeding under § 522(f) to avoid a

18

lien or other transfer of property exempt under the Code shall be commenced by motion in the manner

provided by Rule 9014, or by serving a chapter 12 or chapter 13 plan on the affected creditors in the

manner provided by Rule 7004 for service of a summons and complaint.") and 7001(2) (adversary

proceedings include "a proceeding to determine the validity, priority, or extent of a lien or other interest

in property, but not a proceeding under . . . Rule 4003(d)"). The BAP stated that a proceeding to avoid a

lien under § 522(f) should be "a summary proceeding susceptible to a quick resolution" and that the

actuarial determination of a debtor's interest would not fit that mold. *In re Snyder*, 249 B.R. at 46. Judge

Votolato expressed similar concerns in his decision to follow *Snyder*.  *In re Strandberg*, 253 B.R. at 589

("While there may be some appeal to using actuarial evidence to arrive a more precise value of a

debtor's interest in property owned as tenants by the entirety, the BAP in *Snyder* explains why such an

approach is unworkable in bankruptcy[.]").

      I find this reasoning unpersuasive for the following reasons. First, the existence (or not) of a rule

and the features of that rule are generally not valid bases on which to determine the meaning of the

statute that the rule implements.  The bankruptcy rules are not fashioned by the legislatures that

enacted the Bankruptcy Code. They offer no special insight into its meaning.  Second, when Congress

enacted § 522(f)(2)(A) in combination with the definition of value in § 522(a)(2), it clearly knew that it

was requiring a valuation process when value was contested. The valuation process involves two parts:

determination of the value of the asset itself, usually real estate, and, when the debtor is not the sole

owner, valuation of the extent of the debtor's interest in it. Motions to avoid judicial liens are, in the

vast majority of instances, brought to avoid liens that encumber property that is the debtor's residence.

And in many such instances, that property is held by the debtor with his or her spouse in a tenancy by

the entirety. It may well be that the second step adds a level of complexity to the process, but it is a

level that Congress must have known it was requiring; the circumstances presented here are by no

means unusual. Third, it is not unusual in bankruptcy for valuation proceedings to occur outside of

Case 18-13325    Doc 230    Filed 07/28/21    Entered 07/28/21 12:15:07    Desc Main
                    Document      Page 20 of 23

adversary proceedings, proceedings under the rules of Part VII of the Federal Rules of Bankruptcy

Procedure. Valuation issues arise frequently and in many contexts in bankruptcy, and sometimes they

are more complex than others; the fact that they usually arise out of simple motions is no deterrent to

their routine and expeditious processing.  Fourth, the vast majority of motions to avoid judicial liens are

unopposed; and in practice, the valuation of a debtor's interest for purposes of § 522(f)(1)(A) is seldom

disputed. For these reasons, the process involved in determining the value of the interest of one spouse

in entireties property is not cause to disregard the explicit mandate of the statute to use and determine

the fair market value of the *debtor's* interest in the property.

### D.  Equity

In its supplemental opposition, RP&S argues that equity does not support avoidance of its lien.

In this argument, RP&S appears to be responding to an unspecified argument advanced by the Debtor.

It remains unclear which of the Debtor's many arguments is being joined here.

It is sufficient to note only that, although the bankruptcy court is often referred to as a court of

equity, still the task before me is strictly one of applying statutory law. Nowhere in § 522(f)(1)(A) and

(f)(2)(A) does the statute require or permit an exercise of judicial discretion, according to the Court's

reading of the equities or for any reason. Equity does not figure into the present task at all.

### E.  Conclusion as to Valuation

For the reasons set forth above, I conclude that a debtor's interest in property held in a

Massachusetts tenancy by the entirety must be valued according to its fair market value, which is an

issue of fact, and I reject *Snyder*'s holding that this value is necessarily and always equal to the fair

market value of the property itself.  By the factual stipulation of the parties, the value of the Debtor's

interest in this instance is no more than $525,000.

**c.  Extent of Exemption and Other Liens**

The formula in § 522(f)(2)(A) for determining the extent to which a lien impairs an exemption

requires determination of "the amount of the exemption that the debtor could claim if there were no

liens on the property."  RP&S does not dispute that $500,000 is the extent of the exemption that the

Debtor could claim if the Debtor's interest were valued per *Snyder*, but RP&S argues that if the valuation

is instead done "by allocation"—meaning, if the Court does not follow *Snyder* in ascribing to the debtor

the entire value of the Property—then the exemption too should be allocated as prescribed for tenants

in common in the Massachusetts homestead statute at ch. 188, § 1.  In relevant part, it states: "if a

home is owned by tenants in common or trust beneficiaries, the declared homestead exemption for

each co-tenant and trust beneficiary who benefits by an estate of homestead declared pursuant to said

section 3 shall be the product of: (i) $500,000; and (ii) the co-tenant's or trust beneficiary's percentage

ownership interest[.]"  Mass. Gen. Laws ch. 188, § 1. This allocation is justified, RP&S argues, because in

*Snyder*, the BAP stated that the allocation of ownership interests between the spouses holding property

in a tenancy by the entirety was akin to treating each individual as a tenant in common.[7]

I find no cause under ch. 188, § 1 to allocate the Debtor's exemption as if the Debtor's interest

were that of a tenant in common. The Debtor is not a tenant in common.  And the Court is not

apportioning or dividing the Property between the Debtor and her husband or otherwise treating her

interest as that of a tenant in common. Rather, the Court is treating her interest as what it is, that of one

spouse holding title through a tenancy by the entirety, and valuing that interest, with all the features it

has in state law, at its fair market value, as § 522(f) and (a)(2) require.  There is no dispute that, under

---

[7] Here, RP&S is referring to a single sentence in the BAP's Snyder decision: "The second possibility is to treat the
tenancy by the entirety as if it were a tenancy in common and assume that the Debtor has a fifty percent interest
in the property." *Snyder*, 249, B.R. at 46.

Case 18-13325    Doc 230    Filed 07/28/21    Entered 07/28/21 12:15:07    Desc Main
Document    Page 22 of 23


the Massachusetts homestead statute, the "declared homestead exemption" for tenants by the entirety is in the amount of $500,000.[8]

In its reply brief, RP&S further argued that if the Court does not follow *Snyder* in ascribing to the Debtor the entire value of the Property, it should, in applying the formula for impairment in § 522(f)(2)(A), apportion the liens on the property between the two spouses in proportion to their interests and use only the Debtor's portion in calculating the amount required by § 522(f)(2)(A)(ii) for "all other liens on the property." RP&S cited no authority for this proposition, and I know of none. The two "other liens on the property" are both mortgages that the Debtor and her husband jointly granted. The full amount of each impairs the Debtor's interest. That they also impair her husband's interest is not cause to disregard the dictates of § 522(f)(2)(A)(ii) in determining the extent of lien avoidance, which is to use the sum of all other liens on the property, "the property" here meaning the Debtor's interest. These liens in their entirety encumber not only the Property as a whole but also the Debtor's interest in it. Their full value must be used in § 522(f)(2)(A)(ii).

### d. Conclusion

Having determined that the value of the Debtor's interest in the property is no more than $525,000, that the Debtor is entitled to an exemption of $500,000, and that the full amount of the other liens should be used in § 522(f)(2)(A)(ii), application of the formula in § 522(f)(2)(A) shows that the full amount of RP&S's lien impairs the exemption to which the Debtor would have been entitled: the sum of the lien [$250,094.44], all other liens on the property [$177,740.58], and the amount of the exemption that the debtor could claim if there were no liens on the property [$500,000] is $927,835.02, which sum

---

[8] See MASS. GEN. LAWS c. 188, § 1, defining "declared homestead exemption" as "an exemption in the amount of $500,000 created by a written declaration, executed and recorded pursuant to section 5; provided, however, that: (1) with respect to a home owned by joint tenants or tenants by the entirety who are benefited by an estate of homestead declared pursuant to section 3, the declared homestead exemption shall remain whole and unallocated, provided that the owners together shall not be entitled to a declared homestead exemption in excess of $500,000."

22

exceeds the value that the debtor's interest in the property would have in the absence of any liens [no more than $525,000] by at least $402,835.02.  As this amount exceeds the amount of the lien, the Debtor is entitled under § 522(f)(1)(A) to avoidance of the lien in its entirety. A separate order shall enter accordingly.

Date:  July 28, 2021

_____

Frank J. Bailey
United States Bankruptcy Judge